McNULTY, Judge,
(dissenting).
I am not prepared to say that the conditions required by the will for the vesting of “title” to the grove in appellants were conditions precedent. A strong case can be made that they are conditions subsequent.[1] But I don’t think it makes any difference in this case either way because in my view, the conditions were complied with. For this reason I am compelled to dissent.-
The critical period of time involved herein is that which elapsed between the date of the death of the testatrix and the date of death of the first life tenant (a sister of the testatrix), a period of approximately two years; and the crux of the case as I see it is whether the “conditions” were performed during this time as intended by the testatrix. It is rudimentary that the testative intent controls, and to ascertain such intent all four paragraphs of Paragraph EIGHTH of the will must be read in their entirety and in sequence, rather than portions of each read out of context. When so read in sequence, it is clear that the testatrix first gave the Guilliams the right of possession of the realty involved jointly with the first life tenant; secondly, she directed that the Guilliams manage the “grove and ferneries” thereon; thirdly, she bequeathed the income therefrom to the Guilliams; following this bequest, she next directed that the Guilliams pay all taxes, utilities, etc.; and finally, she devised a remaining life estate to the Guilliams upon the death of the first life tenant, provided they perform as aforesaid. *637 These provisions are patently susceptible of two possible interpretations as they relate to the Guilliams’ duty to pay all taxes, utilities, etc.; i.e., (1) that the Guilliams pay such expenses out of the “income” from the grove and the ferneries, which income was bequeathed to them, or (2) that they pay them out of their own pockets as a condition precedent to their inheriting the “income” and, subsequently, the realty. The trial Court and the majority have apparently accepted the latter construction. I can’t agree.
Not only does the chronological sequence and mode of expressing the testatrix’ directions indicate that she intended the former construction, but there is no other reasonable explanation for her having bequeathed the “income” to the Guilliams during their management of the properties for the life of the first life tenant. First of all, in this regard, it’s significant to note that the first life tenant was named both trustee and executrix; and if the testatrix’ intent was merely to impose duties on the Guilliams as a condition precedent to their taking the “income”, the very same purpose could have been accomplished merely by giving such income to the trustee-executrix with directions that they be delivered over to the Guilliams upon performance of the conditions. Secondly, if the testatrix’ intent was to compensate the Guilliams for their efforts in managing the grove and fern-eries, this too, could have been accomplished in the same way, i.e., by directions to the trustee-executrix. Finally, if it was the testative intent that the Guilliams pay the specified expenses out of their own pockets, as conditions for their taking only the remainder of the real estate, there would be no need to bequeath them the “income” at all.
In sum, it is obvious to me from all patent circumstances that the testatrix clearly intended to provide the Guilliams with an “income” out which they were directed to pay the certain expenses itemized; and it is further clear that she expressly bequeathed such income to negate any conclusion that she was requiring the Guilliams to “subsidize” her estate to the extent of the amount of such expenses.
Now it is true that § 733.01, F.S.A. directs that the personal representative, as trustee for devisees and legatees,[2] receive the assets of a given estate out of which he is directed to pay just claims and expenses. But this statute is a procedural statute and merely provides the mechanics for the administration of decedent’s estates. It has no bearing on the construction of wills, on the ascertainment of testative intent or on the operative effect of the provisions of a will. If such statute has any application in the disposition of this case it can only mean that when the testatrix died her executrix had a duty to receive the assets and administer them in accordance with the law and the terms of the will. There is nothing unlawful or against public policy in the terms of the will; and Paragraph EIGHTH thereof directed that the management of the grove and ferneries be in the hands of the Guilliams. As pointed out above, Paragraph EIGHTH also clearly bequeathed the “income” to the Guilliams. In administering the estate, the executrix could have acquiesced in the directions of Paragraph EIGHTH as to management of the grove, which the record reveals was in fact done, or, for good cause and by court order, could have had others substituted as managers. Indeed, it is undisputed that until the life tenant was declared incompetent and removed as executrix, the Guilliams did manage the grove and ferneries and turned the “income” over to the executrix (which income exceeded $23,-000.00 during the critical time material herein), and the taxes and other necessary expenses were paid by the executrix. *638 Thereafter, the appellant Agnes Guilliams was appointed executrix and the same situation continued until the death of the first life tenant. The fact remains, in my judgment, that in each case the taxes, utilities, etc., were paid as intended by the testatrix, i.e., out of the “income” from the grove and ferneries; and to the extent that such testative intent imposed “conditions” on the Guilliams, such “conditions” were performed. This remains true and is not affected in any way by the fact that ultimately, the “income” was also used to pay additional expenses of the estate (the total of which eventually exceeded all liquid assets thereof).
As noted in the majority opinion, the appellant Clyde Guilliams was paid a total of approximately $2,600.00 for “services” in managing the grove, and appellees urge this fact in support of an estoppel. This is untenable. It’s true that these monies were paid during the period when the appellant Agnes Guilliams was executrix; but it’s also true that they were paid out of the total assets of the estate during the time when the Guilliams were remitting to the account of the estate the aforesaid $23,000.00 in “income” which had been bequeathed to them. During this period appellants may well have believed that the aforesaid $2,600.00 in compensation was an advance on their legacy. Concededly this may have been an erroneous belief, but no fraud is suggested and indeed, such monies were paid pursuant to court order. In any event, even if such sums were in fact erroneously paid, they are reimbursable, and perhaps may even constitute a lien or charge on any remainder or interest in the estate which now is vested in appellants. Such facts cannot, however, have any bearing on the intent of the testatrix or on the operative effect of her will; nor will they support any theory of estoppel.
Accordingly, summary judgment for appellees herein was improper and I would reverse.

. See, e. g., Trueman Fertilizer Co. v. Allison (Fla.1955), 81 So.2d 734; Pyle v. Pyle (Fla.1951), 53 So.2d 312; and In re Rosenthal’s Estate (Fla.3d D.C.A.1966), 189 So.2d 507.